# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SHEILA SANDERS, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 2:15-cv-00235-JHE |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Sheila Sanders ("Sanders") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Sanders timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Sanders filed her application for a period of disability and DIB in June 2011, alleging she became unable to work beginning May 13, 2009. (Tr. 141). Sanders was a forty-eight year old female on May 1, 2013, her date of hearing. (Tr. 27). Sanders has at least a high school education and past relevant work as a materials handler. (Tr. 16, 62-63, 181-184). The Agency

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

initially denied Sanders' application, and Sanders requested a hearing where she appeared in May 2013. (Tr. 31-51). After the hearing, the Administrative Law Judge ("ALJ") denied Sanders' claim on August 1, 2013. (Tr. 9-18). Sanders sought review by the Appeals Council, but it declined her request on December 9, 2014. (Tr. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner. On July 16, 2015, Sanders initiated this action. (*See* doc. 11).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

（1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers.  *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Sanders last met the insured status requirements of the Social Security Act on December 31, 2014 (her date last insured or "DLI"), and that Sanders had not engaged in substantial gainful activity from her alleged onset date of May 13, 2009, through her DLI. (Tr. 11).  At Step Two, the ALJ found Sanders has the following severe impairments: hypertension; chronic kidney disease, stage 2; obesity; lumbar and cervical degenerative disc disease; cervical radiculopathy; headaches; and right foot plantar fasciitis (20 CFR 404.1520(c) and 416.920(c)).  (Tr. 11).  At Step Three, the ALJ found Sanders did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12).

Before proceeding to Step Four, the ALJ determined Sanders' residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that, through her DLI, Sanders had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except Sanders can push and pull with the

upper and lower extremities bilaterally frequently; can frequently climb ramps and stairs and balance; can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently reach overhead on the left side; can handle and finger frequently bilaterally; can have occasional exposure to extreme heat and cold, and should have no more than occasional exposure to unprotected heights and hazardous, moving machinery.  (Tr. 12-16). At Step Four, the ALJ determined, through the date last insured, Sanders is unable to perform any past relevant work.  (Tr. 16).  At Step Five, the ALJ determined, based on Sanders's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Sanders could perform, including cashier, surveillance system monitor, and document preparer. (Tr. 17).  Therefore, the ALJ determined Sanders has not been under a disability and denied Sanders's claim.  (Tr. 18).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Sanders contends the ALJ did not properly assess the credibility of her testimony consistent with the Eleventh Circuit Pain Standard. (Doc. 11 at 5).  When a claimant attempts to establish disability based on subjective complaints, including pain, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of

the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996-374186. If the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her work must be evaluated. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency). After considering the evidence presented, the ALJ found Sanders's impairments could cause the alleged symptoms; however, the ALJ found her statements were not credible. (Tr. 13-16).

Sanders takes issue with the ALJ's determination her complaints of debilitating back pain were not credible, his interpretation of her daily activities, and his finding she made inconsistent

statements relating to her disability. (Doc. 11 at 7-10).

Sanders begins by citing the ALJ's conclusions that low back pain and lumbar and cervical radiculopathy limited her ability to reach, handle, and finger and prevented her from doing anything beyond sedentary work, and describes those conclusions as "basically f[inding] the Plaintiff's medical history is inconsistent with her allegations of disability." (*Id.* at 6). She then cites her "longitudinal history of complaints of and treatment for her chronic moderately severe back pain" and summarizes that history, concluding "[t]he ALJ erred in refusing to properly credit the objective medical evidence and treatment notes when finding the Plaintiff was capable of sedentary work." (*Id.* at 6-8). However, while a longitudinal history will "generally lend support to an individual's allegations," SSR 96-7P, 1996 WL 374186 at *7 (S.S.A. July 2, 1996), it is certainly not dispositive of the issue, especially where there is also substantial evidence in the record undermining credibility. Similarly, although the existence of objective medical diagnoses can support her complaints, they are not themselves indicative of disabling pain or inability to work. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). The ALJ looked at all of the same objective evidence Sanders cites and, considering the other subjective evidence in light of the evidence regarding credibility, concluded she was limited to sedentary work with other specific limitations, instead of totally disabled. (Tr. 14-15).[4] Sanders cannot establish error merely by citing the same evidence and stating a different conclusion.

Next, contrary to Sanders's implication, the ALJ can rely on inconsistencies between

---

[4] The medical evidence also supports a finding of obesity, which the ALJ considered in his decision and noted can exacerbate subjective complaints of pain. (Tr. 14). The ALJ explicitly considered her obesity in limiting her work to the sedentary level of exertion. (*Id.*).

Sanders's reported activities of daily living and her complaints of disabling pain as evidence of her lack of credibility. *See Hughes v. Comm'r of Soc. Sec.*, 486 F. App'x 11, 14-16 (11th Cir. 2012) (finding the ALJ's credibility articulation adequate based in part on the contrast between her statements of extreme limitation and her less limited activities of daily living). Sanders's contrary citations do not indicate otherwise. In *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997), the court found the "everyday activities of short duration" did not disqualify the claimant from disability and were not "inconsistent with the limitations recommended by [the claimant]'s treating physicians." *Id.* at 1441. Nothing in *Lewis* prevents an ALJ from finding such inconsistencies between the everyday activities and limitations suggested by the claimant or her doctors. *See Hughes*, 486 F. App'x at 14-16. *But see Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006) (reversing the ALJ after noting his reliance on the claimant's activities but failure to acknowledge her limiting descriptions of them). While the discrepancies are not dispositive of disability, their inconsistency with subjective statements may indicate Sanders's pain is not as limiting as she has alleged.

The question is whether the cited activities are truly inconsistent with the claimed disability. In a short paragraph, the ALJ noted Sanders's reports of daily activities at the hearing and in her function report. (Tr. 15-16). In that evidence, Sanders reported she was able to cook simple meals (between two and eighteen minutes at a time), shop for groceries for an hour or two twice a month, drive, fold and put away laundry once a month, take care of her personal care and hygiene (with help from one of her daughters getting dressed), and care for her disabled daughter with cerebral palsy (with help from the other daughter). (Tr. 53-54, 56, 174-76). It is not clear how these are inconsistent with her claims of needing to rest for six hours during the day or regularly (but not constantly) having extreme pain that would prevent her from maintaining

8

employment. The cited evidence does not support the ALJ's finding of inconsistency. *See Horton*, 469 F. Supp. 2d at 1047.

However, the ALJ did not err by voicing his concern over Sanders's inconsistent statements about her back condition. The ALJ may consider any conflicts or inconsistencies between a claimant's testimony and the rest of the evidence. *See* 20 C.F.R. §404.1529(c)(4), 416.929(c)(4). During an examination with Dr. William Meador, Sanders stated she was using a wheelchair for six months after the 2008 fall to complete daily activities. (Tr. 16, 260). However, in 2008, Sanders denied any ambulatory problems to Dr. Vrocher after the work place fall. (Tr. 198). When questioned about it at her ALJ hearing, Sanders retracted the wheelchair statement and testified she used only a motorized cart while grocery shopping. (Tr. 16, 55). Sanders contends the ALJ did not properly consider her "clear explanation" of the discrepancy, (doc. 11 at 10), but the ALJ explicitly considered her explanation and found that, even if the inconsistent information were not intentionally misleading, it suggested "that the information provided by the claimant generally may not be entirely reliable," (tr. 16). The ALJ properly considered Sanders's inconsistent statements and her explanation when determining her credibility.

Regardless, even though Sanders's challenges to the ALJ's decision do not establish grounds for reversal or remand, the Court must still consider whether there is substantial evidence to support the ALJ's conclusions.[5] The undersigned finds there is.

First, the ALJ found the records did not support Sanders's allegations of debilitating

---

[5] Sanders also briefly states the ALJ "failed to fully and fairly develop the record, but she does not further develop the argument beyond that single sentence. (Doc. 11 at 10). It is unclear what issue is underdeveloped or where there are unfair holes in the record. Having offered no argument to clarify the issue, she has abandoned this claim. *See Hutchinson v. Astrue*, 408 F. App'x 324, 326 n.1 (11th Cir. 2011) (citing *Davis v. Jones*, 506 F.3d 1325, 1330 n.8 (11th Cir. 2007)).

headaches four times a month. (Tr. 15). Although he acknowledged she had complained of headaches to her doctors, he noted it was "off and on since approximately 2007," they were treated with over-the-counter medication, and, despite alleging her headaches were a nine out of ten on the pain scale four times a month, she did not mention them to Dr. Meador during her disability examination. (*Id.*) (citing tr. 227-63).

Regarding her back pain, the evidence shows the claimant initially complained of lower back pain after a work-related fall in January of 2008. (Tr. 14, 198-199). A magnetic resonance imaging (MRI) revealed a large right-sided L5-S1 disc herniation, and Sanders received epidural pain blocks to treat the pain. (Tr. 209-212). In February 2009, Sanders was involved in a motor vehicle accident. (Tr. 14-15, 217). Sanders's x-rays showed no fracture and normal alignment and soft tissues. (Tr. 14-15, 218). In April 2009, Sanders obtained an MRI revealing suspicions of a small disc herniation at C5-C6 with very minimal disc bulging noted at C4-C5 and C6-C7. (Tr. 14, 226). In October 2009, Sanders visited the emergency room with a complaint of fever. (Tr. 247). Dr. Mosier found that Sanders had lower back pain, yet Sanders had a full range of motion and straight leg raises were normal. (Tr. 247-49). In February 2010, Sanders visited Dr. Martin Bohnenkamp for a check-up but made no mention of her back condition. (Tr. 245).

In October 2011, in connection with Sanders's application for disability, she submitted to a physical examination. (Tr. 15, 259-63). Sanders complained of spurs in her neck and lower back pain. (Tr. 15, 259). She had normal muscle strength except for a 4/5 in her right quadriceps. (Tr. 15, 262). She had tenderness to palpation the lumbar spine and positive straight leg raise on her right leg with tingling in her right foot. (Tr. 262). Sanders was diagnosed with low back pain, lumbar radiculopathy, and cervical radiculopathy by the attending physician, Dr. Meador. (Tr. 263). Because of Sanders's cervical radiculopathy, the ALJ recognized limitations

in Sanders's ability to reach, handle, and finger in her residual functional capacity.  (Tr. 15).  The ALJ also acknowledged the consistency in Sanders's complaints and found Sanders exertion to be limited to the sedentary level.  (*Id.*).

With respect to Sanders's hypertension, she was diagnosed in 2007 and has been taking medicine for it since.  (Tr. 234, 237, 242).  While taking her medicine, Sanders's hypertension is well controlled.  (Tr. 239, 242, 245).  As a result, the ALJ found Sanders capable of having occasional exposure to unprotected heights and hazardous, moving machinery but can never climb ladders, ropes, or scaffolds.  (Tr. 14).

In relation to Sanders chronic kidney disease, the evidence demonstrates Sanders's had stage four kidney disease in February of 2010.  (Tr. 30, 245).  However, by February of 2011, Sanders's kidney disease digressed to stage three.  (Tr. 30, 227).  Furthermore, in November of 2012, Sanders's kidney disease was stated to be stage two and "stable."  (Tr. 30, 239, 242, 265-67).  At the hearing, Sanders only complained the kidney disease made her tired and need to go the bathroom more often.  (Tr. 40).  The ALJ considered these impairments in finding Sanders capable of sedentary level exertion.  (Tr. 14).

Considering the record as a whole, substantial evidence supports the ALJ's findings.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Sanders's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 23rd day of September, 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE